1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 6/8/06**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CHARLES I. IKEKWERE,

              Plaintiff,

      v.

SOUTHWALL TECHNOLOGIES, INC.,

              Defendant.

Case Number C 04-00027 JF (PVT)

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

[re: doc. no. 58]

     Defendant Southwall Technologies, Inc. ("Southwall") moves for summary judgment or

partial summary judgment of the claims asserted by Plaintiff Charles Ikekwere ("Ikekwere").

The Court has considered the moving and opposing papers as well as the oral arguments

presented at the hearing on March 24, 2006.  For the reasons discussed below, the motion will be

granted in part and denied in part.

**I. BACKGROUND**

     Southwall, a company headquartered in Palo Alto, California, designs and produces thin

film coatings for a wide range of commercial applications, such as transparent window

insulation.  Ikekwere, an African-American man of Nigerian ancestry, began working for

Southwall as a Payroll Accountant in July 1999.  In a performance evaluation conducted in

1  February 2000, he received an overall rating of 3 on a scale of 1 to 5.  The evaluation noted that

2  Ikekwere had excellent payroll processing skills but needed to develop better interpersonal skills.

3  The evaluation was performed by Bill Finley ("Finley"), Southwall's financial accounting

4  manager and Ikekwere's direct supervisor through February 2000.  At about the same time as the

5  evaluation was performed, Southwall moved its payroll function from the financial accounting

6  department to the human resources department.  As a result, Ikekwere began reporting to Cathy

7  Poliak ("Poliak"), Southwall's vice president of human resources, in February 2000.  Poliak

8  signed off on the February 2000 review.

9       In July 2000, Poliak promoted Ikekwere to Senior Payroll Accountant.  Ikekwere claims

10  that in September 2000 Poliak and Ken Maxwell ("Maxwell"), Southwall's benefits and

11  compensation manager, knowingly and falsely accused him of stealing $1.5 million from the

12  company.  He claims that Poliak and Maxwell forced him to work nine-hour days going through

13  old payroll records until he was able to prove that he had not stolen the money.

14       Ikekwere claims that in November 2000 he complained to Southwall's president, Tom

15  Hood ("Hood"), that he was not receiving pay comparable to that of similarly situated Caucasian

16  employees, and that he and other Black employees were not being offered stock options that were

17  offered to non-Black employees.  That same month, he was promoted to Payroll Supervisor, at

18  which time he received a 23.5% increase in annual compensation and 2,500 stock options.

19       In November or December 2000, Southwall moved the payroll function from the human

20  resources department back to the financial accounting department.  At about the same time, John

21  Lipscomb ("Lipscomb") became Southwall's vice president of finance and corporate controller.

22  Lipscomb, who also is African-American, became Ikekwere's direct supervisor.  In a

23  performance evaluation dated June 2001, Lipscomb gave Ikekwere an overall rating of 3.5.

24  Lipscomb stated that Ikekwere performed his responsibilities in a professional and competent

25  manner but needed to improve his communications skills.  At about the same time that Lipscomb

26  performed Ikekwere's June 2001 evaluation, Peter Lee ("Lee"), Southwall's financial accounting

27  manager, became Ikekwere's direct supervisor.

28       Ikekwere asserts that in June or July 2001 Lipscomb and Maxwell forced him to falsify

2

1  employment documentation to show that a Roger Cansler ("Cansler") had been an employee of

2  Southwall since January 2001 when in fact Cansler had died in December 2000.  According to

3  Ikekwere, Lipscomb and Maxwell planned to make a fraudulent claim for life insurance proceeds

4  on Cansler.  Ikekwere asserts that when he balked at creating the requested documentation,

5  Lipscomb threatened to accuse him of insubordination.  Ikekwere thereafter created the requested

6  documentation but also contacted Southwall's insurance providers.

7        Southwall asserts that Ikekwere was not asked to falsify payroll information but rather

8  was asked to complete documentation on Cansler because, although Cansler had worked for the

9  company for one week prior to his death, his employment paperwork had not been completed.

10  Southwall asserts that it requested Ikekwere to complete the paperwork so that Cansler's widow

11  could obtain the one week of salary that Cansler had earned as well as insurance benefits to

12  which she was entitled.  Both insurance companies that issued policies covering Southwall

13  employees paid out on the Cansler claim.

14        In August 2001, Ikekwere requested and was granted an extended medical leave of

15  absence.  Ikekwere states in his declaration that the purpose of the leave was for him "to receive

16  psychotherapy for severe emotional distress," Ikekwere Decl., ¶ 20, but he does not provide any

17  further details about his medical condition.  While Ikekwere was on leave, his payroll duties were

18  performed by Angelo Tuazon ("Tuazon"), a senior accountant.  Tuazon identified a number of

19  processes that helped him streamline payroll and perform payroll functions while simultaneously

20  performing his own job duties.  In September 2001, when Ikekwere returned from leave, Lee and

21  Martha Minor ("Minor"), Southwall's vice president of human resources, met with Ikekwere to

22  discuss implementation of the procedures Tuazon had identified.  At the end of the meeting, Lee

23  gave Ikekwere a memorandum ("Functional Requirements Memorandum") outlining Ikekwere's

24  new job requirements.  Ikekwere returned a signed copy of the memorandum on September 11,

25  2001.

26        Ikekwere claims that shortly before he returned from his medical leave, he received a

27  Federal Express package from Southwall instructing him not to return to work because Southwall

28  was investigating complaints Ikekwere had made against Lipscomb and Lee.  He further claims

3

that when he returned to work after his leave, he found that his company badge had been

deactivated (which meant that he could not enter the premises on his own), and that his work

station had been dismantled.  The badge was reactivated after Ikekwere turned in his leave

paperwork.  With respect to the Functional Requirements Memorandum, which Ikekwere

characterizes as a "new contract," Ikekwere claims that he signed it only because Lipscomb

stated that he would not be allowed to return to work unless he did so.

Lee met with Ikekwere, Minor and Tuazon on November 13, 2001 to discuss Ikekwere's

failure to implement the procedures outlined in the Functional Requirements Memorandum.

Southwall asserts that Ikekwere was disruptive, rude and insubordinate during the meeting and

that he accused Minor of being a racist and described the Functional Requirements Memorandum

as discriminatory.  Lipscomb issued a written warning memorandum to Ikekwere on November

17, 2001, stating that he had interviewed all of the attendees at the November 13 meeting and

summarizing the meeting as follows:  Lipscomb stated that Lee, Minor and Tuazon had described

Ikekwere's conduct as disruptive, rude and insubordinate and had stated that Ikekwere called

Minor a racist; that he (Lipscomb) had noticed that Ikekwere tends to become agitated and raise

his voice, and had had frequent outbursts during the past ten months; that he (Lipscomb) had

concluded that Ikekwere's behavior at the November 13 meeting was disruptive and

insubordinate; and that if Ikekwere engaged in such disruptive or insubordinate behavior in the

future he would be subject to disciplinary action, which could include termination.

Ikekwere refused to sign the warning memorandum to acknowledge its receipt and

instead prepared a rebuttal memorandum dated November 21, 2001.  The rebuttal memorandum

discussed Ikekwere's medical leave, the alleged dismantling of his workstation, a number of

other alleged incidents, and the November 13 meeting.  With respect to the meeting, Ikekwere

denied that he had been disruptive, rude or insubordinate and accused Lipscomb of trying to get

him "out of Southwall."  Ikekwere also stated as follows:

> I do not know what is going on here, but let me say this to you, the truth of the
> November 13th meeting will definitely come to light one of these days and when
> that happens, I promise, you will feel used and betrayed by those you believe and
> trust today.  In raping [sic] this up, please be careful of using hear say [sic],
> especially as contained in this your warning letter.  It is dangerous and very

4

1    harmful to those who are weak and cannot defend themselves under the
2    circumstances.

3    Lipscomb responded to Ikekwere's rebuttal memorandum on November 26, 2001.  Lipscomb's

4    response reiterated his conclusions regarding the November 13 meeting and also informed

5    Ikekwere that he would be transitioned from an exempt (salaried) employee to a non-exempt

6    (hourly) employee effective January 1, 2002.

7         Lee confirmed Ikekwere's transition from exempt to non-exempt status in a written

8    memorandum on December 27, 2001.  This resulted in a reduction of Ikekwere's compensation

9    package from approximately $77,000 to approximately $65,000.  Ikekwere's title also changed

10   from Payroll Supervisor to Payroll Specialist/Support IV.  Shortly thereafter, Ikekwere left on a

11   five-week vacation to Nigeria, during which time Tuazon again covered payroll duties.

12   Southwall asserts that Tuazon completed the payroll duties in far less time and just as well, if not

13   better, than Ikekwere, and that Tuazon got along well with other employees whereas Ikekwere

14   did not.  Lee recommended to Lipscomb that Ikekwere be terminated, and Lipscomb concurred.

15   Lee spoke with Ikekwere the morning of March 1, 2002 and asked him to attend a meeting that

16   afternoon.  Lee terminated Ikekwere at the later meeting, which also included Minor and another

17   human resources representative.  Tuazon took on the payroll duties in addition to his existing

18   accounting duties; Southwall did not fill the position vacated by Ikekwere.

19        Ikekwere claims that Tuazon was not more efficient and that he (Ikekwere) had no

20   problems getting along with others; that when he returned from Nigeria he brought his wife and

21   children to America for the first time, thus triggering an obligation on the part of Southwall to

22   extend benefits to his entire family; that he handed Minor a doctor's release justifying medical

23   leave only minutes before he was terminated; and that Southwall terminated him for

24   discriminatory and retaliatory reasons.  Ikekwere's operative third amended complaint ("TAC")

25   alleges the following claims:  (1) a claim under California's Fair Employment and Housing Act

26   ("FEHA"), Cal. Govt. Code §§ 12900 *et seq.,* for discrimination on the basis of race and color;

27   (2) a FEHA claim for discrimination on the basis of national origin; (3) a FEHA claim for

28   retaliation; (4) a FEHA claim for discrimination on the basis of medical condition; (5) breach of

5

1    the implied covenant of good faith and fair dealing; (6) discrimination on the basis of race, color

2    and national origin in violation of the California constitution; (7) fraud and deceit; and (8) a

3    claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

4    1001 *et seq*.

5                                         **II. LEGAL STANDARD**

6         A motion for summary judgment should be granted if there is no genuine issue of

7    material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

8    56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears

9    the initial burden of informing the Court of the basis for the motion and identifying the portions

10   of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

11   demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

12   317, 323 (1986).

13        If the moving party meets this initial burden, the burden shifts to the non-moving party to

14   present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

15   *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents

16   evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

17   party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49;

18   *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

19                                         **III. DISCUSSION**

20   **A.    FEHA Claims For Discrimination (Claims 1, 2 and 4)**

21        Ikekwere claims that Southwall discriminated against him on the basis of race and color

22   (first claim), national origin (second claim) and medical condition (fourth claim). Discrimination

23   on these bases is unlawful under FEHA. Cal. Govt. Code § 12940(a). Ikekwere alleges a

24   number of adverse employment actions, but concedes that any actions that occurred prior to May

25   21, 2001 are time-barred. Ikekwere thus appears to base his discrimination claims on the

26   following alleged adverse actions by Southwall: (a) coercing Ikekwere to create the alleged false

27   Cansler payroll documents in June or July 2001; (b) deactivating his identification badge in

28   August 2001; (c) dismantling his workstation in September 2001; (d) demanding that he make

                                                    6

improvements (the Functional Requirements Memorandum) in September 2001; (e) demoting him to a non-exempt (hourly) employee and changing his job title to remove the word "supervisor" in December 2001; (f) reducing his pay in December 2001; and (g) terminating his employment in March 2002.

In assessing claims brought under FEHA, California courts utilize the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 354 (2000). Under that framework, the plaintiff has the initial burden to establish a *prima facie* case of discrimination, which generally will require evidence sufficient to support a finding that "(1) the plaintiff was a member of a protected class; (2) he was qualified for the position he sought or was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance suggests discriminatory motive." *Id.* at 355. The burden then shifts to the employer to provide evidence of a legitimate, nondiscriminatory reason for its action. *Id.* at 355-56. If the employer provides such evidence, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext, or to offer additional evidence of discriminatory motive. *Id.* at 356.

In the instant case, Ikekwere has made out a *prima facie* case of discrimination based upon race and color, national origin and medical condition. There is no dispute that Ikekwere is a member of a protected class with respect to race, color and national origin. There likewise is no dispute that Ikekwere took lengthy medical leaves authorized by his doctor. The record demonstrates that he was qualified for the position he held at the time of the alleged adverse actions. At least some of the actions in question constitute adverse employment actions, for example, demoting Ikekwere to a non-exempt (hourly) position, reducing his pay and terminating his employment. Finally, Ikekwere's duties were transferred to a less experienced Filipino man.

Southwall introduces substantial evidence that its actions were motivated by legitimate business reasons. Lipscomb, Lee, Minor, Poliak and Maxwell all submit declarations stating in essence that Ikekwere was far less efficient with payroll than was Tuazon; that Ikekwere did not get along well with others, whereas Tuazon did; that Ikekwere refused to implement the

7

1   streamlining procedures created by Tuazon; that Ikekwere was insubordinate and disruptive; and

2   that because Tuazon was able to take on all of Ikekwere's duties in addition to his previous

3   duties, Southwall was able to save Ikekwere's salary by eliminating his position and transferring

4   his duties to Tuazon.

5        The burden thus shifts back to Ikekwere to present some evidence that Southwall's

6   articulated reasons are pretextual or that Southwall actually had a discriminatory motive.

7   Ikekwere relies primarily upon his own declaration in meeting this burden.  With respect to race

8   and color, Ikekwere makes conclusory statements that Poliak "never believed that Black

9   Southwall employees should receive equal treatment regarding pay and other benefit [sic]," and

10  that Minor "believed that Black people should not be exempt employees."  Ikekwere Decl., ¶ 62.

11  Ikekwere provides no factual bases for these conclusions, and therefore his statements reflect

12  nothing more than his subjective believe that Poliak and Minor had a discriminatory animus

13  against Blacks.  Ikekwere states his recollection that "within a year or so after John Lipscomb's

14  arrival at Southwall, the number of Black employees there was reduced from 23 to 8."  *Id.* at ¶

15  73.  However, Ikekwere does not state the basis for his knowledge regarding the number of Black

16  employees at the company, and does not provide any basis for his apparent belief that Lipscomb

17  fired those Black employees who left the company.  Accordingly, the Court concludes that

18  Ikekwere has failed to present evidence sufficient to create a triable issue of material fact as to

19  the discrimination claims based upon race and color.

20       With respect to national origin, Ikekwere's evidence is slightly more focused.  He states

21  that when Lipscomb first arrived at Southwall, Lipscomb stated that Ikekwere was making "too

22  much money."  Ikekwere Decl., ¶ 17.  Ikekwere also states that when Lee first arrived at

23  Southwall, Lee stated that he had been told to "monitor" Ikekwere by Lipscomb.  *Id.* at ¶ 18.

24  Ikekwere also states that in November 2001, Lipscomb made the following statement:  "Charles,

25  if you are as smart as you people from Africa claim to be, you should know it is time for you to

26  leave the company."  *Id.* at ¶ 74.  While this is by no means strong evidence of discrimination on

27  the basis of Ikekwere's Nigerian origin, a reasonable trier of fact *could* conclude that Lipscomb

28  targeted Ikekwere from the moment Lipscomb arrived at Southwall, and that Lipscomb's conduct

8

1  was motivated by animus arising from Ikekwere's national origin.  Southwall appears to argue

2  that because both Lipscomb and Ikekwere are African-American, a claim of discrimination based

3  upon national origin necessarily is without merit.  This proposition is by no means self-evident,

4  particularly since the context of Lipscomb's alleged remark suggests that Lipscomb himself is

5  not "from Africa."  Lipscomb was the decision maker in this case.  Accordingly, the Court will

6  deny Southwall's motion for summary judgment with respect to the FEHA claim of

7  discrimination based on national origin.

8         With respect to medical condition, Ikekwere states that when he returned from his

9  medical leave in August 2001, his company badge had been deactivated (which meant that he

10  could not enter the premises on his own), and his work station had been dismantled.  Ikekwere

11  Decl., ¶ 21.  He also states that another employee stated that Minor, Lipscomb and Lee had

12  instructed that Ikekwere was not to be permitted on the premises.  *Id.*  He further states that other

13  employees warned him that he had been "set up" by Minor.  *Id.* at ¶ 23.  After he dealt with the

14  badge and work station issues, he was called in to a meeting with Lipscomb, Lee and Minor, at

15  which time he was given the "Functional Requirements Memorandum" outlining Ikekwere's new

16  job requirements.  *Id.* at ¶ 33.  Ikekwere was told that he would be fired unless he signed this

17  document, which he refers to as a "new contract."  *Id.* at ¶¶ 36-37.  Shortly thereafter, Lipscomb

18  began documenting deficiencies in Ikekwere's performance.  *Id.* at ¶ 48.  Within a few months, a

19  decision had been made to transition Ikekwere from exempt to non-exempt status, which resulted

20  in a reduction of his compensation and a change in title.  Several months later, Ikekwere

21  requested further medical by handing a leave form from his doctor to Minor.  *Id.* at ¶ 49.  He

22  states that shortly thereafter, Lee approached him and stated that he had just spoken to Minor and

23  that there was a department meeting that Ikekwere had to attend.  *Id.*  It was at that meeting that

24  Ikekwere was fired.  *Id.*  The Court concludes that a reasonable finder of fact could believe,

25  based upon Ikekwere's version of events and the temporal proximity between his medical leaves

26  and the adverse employment actions, that Southwall discriminated against Ikekwere because of

27  his medical condition.  Accordingly, the Court will deny Southwall's motion for summary

28  judgment with respect to the FEHA claim of discrimination based on medical condition.

9

1

**B.      FEHA Claim For Retaliation (Claim 3)**

2    The Court previously has ruled that Ikekwere's FEHA claim for retaliation is preempted

3    by ERISA to the extent the claim is based upon Southwall's alleged retaliation for Ikekwere's

4    reporting of insurance fraud or upon Southwall's alleged desire to deprive Ikekwere and his

5    family of benefits.  Order of 7/19/05 at p. 4.  Ikekwere additionally appears to be asserting

6    retaliation based upon his internal complaints regarding Southwall's alleged discrimination

7    against Blacks.  He states in his declaration that shortly before he returned from his August 2001

8    medical leave, he received a FedEx package from Southwall instructing him not to return to work

9    pending investigation of complaints he had made against Lipscomb and Lee.  Ikekwere Decl. ¶

10   35.  It was shortly after this incident that he was unable to enter the premises because his badge

11   had been deactivated, discovered his workstation had been dismantled, and was informed that he

12   would be expected to meet new job requirements.  Ikekwere's demotion, title change and

13   termination – all instigated by Lipscomb and Lee – followed shortly thereafter, as discussed

14   above.  A reasonable trier of fact could conclude, based upon Ikekwere's version of events and

15   the temporal proximity of the alleged notice regarding investigation of his complaints and the

16   adverse employment actions, that Lipscomb and Lee retaliated against Ikekwere.  Accordingly,

17   the Court will deny the motion for summary judgment with respect to the FEHA claim of

18   retaliation.

19   **C.      Breach Of The Implied Covenant Of Good Faith And Fair Dealing (Claim 5)**

20   Ikekwere does not oppose summary judgment with respect to his fifth claim for breach of

21   the implied covenant of good faith and fair dealing.  Accordingly, the motion will be granted as

22   to that claim.

23   **D.      Discrimination Under The California Constitution (Claim 6)**

24   Ikekwere's sixth claim asserts discrimination in violation of Article 1, Section 8 of the

25   California Constitution.  This section does not give rise to a private right of action.  *Himaka v.*

26   *Buddhist Churches of America*, 919 F.Supp. 332, 335 (N.D. Cal. 1995).  Accordingly, the motion

27   will be granted as to the sixth claim.

28

10

1    **E.    Fraud And Deceit (Claim 7)**

2        Ikekwere claims that Hood, Lipscomb and Lee promised that he would be treated fairly

3    and that his employment was secure.  The elements of a claim for intentional fraud under

4    California law are:  (1) a misrepresentation or omission, (2) knowledge of falsity (scienter), (3)

5    intent to defraud, (4) justifiable reliance and (5) resulting damages.  *Lazar v. Superior Court*, 12

6    Cal.4th 631, 638 (1996).  A fraud claim may lie where the misrepresentation at issue is a false

7    promise - that is, a promise which the defendant did not intend to keep at the time it was made -

8    which induced the plaintiff to enter into a contract.  *Id.*   However, the Court concludes as a

9    matter of law that the alleged promises, even if made, are not sufficiently definite to support a

10    fraud claim, and that any reliance upon such promises was not justifiable in light of Ikekwere's

11    at-will status.  *See Slivinsky v. Watkins-Johnson Co.*, 221 Cal.App.3d 799, 807 (1990) (holding

12    that employee could not maintain fraud claim based upon oral promises of continuing

13    employment when such promises were contradicted by the parties' employment agreement

14    providing that the employee was at-will).  It is undisputed that Ikekwere signed an offer letter and

15    handbook explicitly stating that his employment was at-will.

16    **F.    ERISA**

17        Ikekwere claims that Southwall discriminated against him and sought to deprive him of

18    benefits in violation of 29 U.S.C. § 1140, forbidding an employer from discharging or

19    discriminating against an employee, or interfering with an employee's rights to benefits, in

20    retaliation for the employee's exercise of rights under a benefit plan or whistleblowing activities

21    with respect to a benefit plan.  A plaintiff may satisfy his burden of demonstrating a violation of

22    § 1140 by means of circumstantial evidence analyzed under the *McDonnell Douglas* burden-

23    shifting framework discussed above.  *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 457 (9th Cir.

24    1995).  Southwall asserts that the same legitimate, non-retaliatory reasons that defeat Ikekwere's

25    FEHA claims also defeat his ERISA claim.  As discussed above, the Court concludes that a

26    triable issue of material fact exists with respect to whether Southwall had a discriminatory or

27    retaliatory animus in demoting and discharging Ikekwere.  Accordingly, the Court will deny

28    Southwall's motion with respect to the ERISA claim.

1

**IV. ORDER**

2      Southwall's motion for summary judgment is GRANTED IN PART AND DENIED IN

3 PART.  The motion is GRANTED with respect to claims 1, 5, 6 and 7, but is DENIED with

4 respect to claims 2, 3, 4 and 8.

5

6

7

8 DATED:  6/8/06

9

10      _____
        JEREMY FOGEL
11        United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

1   Copies of Order served on:

2

3   Brian Lee Johnsrud      bjohnsrud@morganlewis.com, regina.henley@morganlewis.com

4

5   Alexander Nestor       anestor@morganlewis.com, richard.jackson@morganlewis.com

6

7   Curtis Gilbert Oler , Esq      c.oler@worldnet.att.net,

8   Melinda S. Riechert      mriechert@morganlewis.com, bjohnsrud@morganlewis.com;

9   kpastor@morganlewis.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13